Brett D. Szmanda (SBN 288688)
SZMANDA LAW FIRM, P.C.
17011 Beach Blvd., Ste. 900
Huntington Beach, California 92647
Telephone: (714) 369-6861
brett@szmandalaw.com

Attorney for Plaintiff Eduardo Santana

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| EDUARDO SANTANA, on behalf of himself and all others similarly situated;<br><br>          Plaintiff,<br><br>     v.<br><br>COLONIAL LIFE & ACCIDENT INSURANCE COMPANY; WESBANCO BANK, INC., d/b/a/ FIRSTNET; AND DOES 1-10,<br><br>          Defendants. | Case No.: 5:23-cv-00187<br>Judge:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES, RESTITUTION, INJUNCTIVE AND OTHER EQUITABLE RELIEF.**<br><br>**CAUSES OF ACTION:**<br><br>1. **Violation of 15 U.S.C. 1693e(a);**<br><br>2. **Violation of 15 U.S.C. 1693e(b);**<br><br>3. **Violation of 15 U.S.C. 1693f;**<br><br>4. **Intentional Misrepresentation;**<br><br>5. **Negligent Misrepresentation;**<br><br>6. **Fraud; and**<br><br>7. **Violation of Business and Professions Code § 17200** *et seq.*<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff Eduardo Santana (hereinafter "Plaintiff"), on behalf of himself and all others similarly situated, alleges as follows:

## INTRODUCTION

1. This is a civil action seeking recovery for Defendants' violations of provisions of the Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.*; California Business and Professions Code; and related common law principles.

2. Plaintiff's action seeks monetary damages, including full restitution from Defendants as a result of Defendants' unlawful, fraudulent and/or unfair business practices.

3. The acts complained of herein occurred, occur and will occur, at least in part, within the time period from four (4) years preceding the filing of the Complaint herein, up to and through the time of trial for this matter.

## JURISDICTION AND VENUE

4. This action is brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

5. The District Court of California has Jurisdiction over this matter pursuant to 29 U.S. Code § 1332 because Plaintiff and the Defendants are citizens of different states, and the amount of controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Furthermore, one or more claims alleged herein are based upon Federal law.

6. Venue in this district is proper pursuant to 28 U.S.C. § 1391(a) and (b) because, on information and belief, a substantial part of the events or omissions giving rise to the claim occurred, and/or a substantial part of property that is the subject of the action is situated in San Bernardino County.

## PARTIES

7. Plaintiff EDUARDO SANTANA ("Plaintiff") is an individual who is a citizen of the State of California and resides in the County of San Bernardino.

8. Defendant COLONIAL LIFE & ACCIDENT INSURANCE COMPANY (hereinafter "Colonial Life") is, and at all times herein mentioned, was a corporation organized under the laws of South Carolina that, during all times herein mention conducted business in the State of California, including the County of San Bernardino, California.

9. Defendant WESBANCO BANK, INC., d/b/a FIRSTNET (hereinafter "Firstnet") is, and at all times herein mentioned, was a corporation organized under the laws of West Virginia that, during all times herein mention conducted business in the State of California, including the County of San Bernardino, California.

10. Plaintiff is ignorant of the true names and capacities of defendants sued here as DOES 1–10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the aforementioned defendants.

11. Plaintiff is informed and believes and based thereon alleges that Defendants Colonial Life, Firstnet and DOES 1-10 ("Defendants") are subsidiaries or predecessors in interest of one another. In the alternative, Plaintiff alleges that if Defendant and DOES 1-10 are not subsidiaries or predecessors in interest of one another, that Defendant and DOES 1-10 are an integrated enterprise in that there is an interrelation of operations between Defendant and DOES 1-10, there is common management between Defendant and DOES 1-10, and there is common ownership or financial control between Defendants and DOES 1-10.

12. Plaintiff is informed and believes, and based thereon alleges, that each and all of the acts and omissions alleged herein were performed by, or are attributable to, Defendants, each acting as the agent for the other, with legal authority to act on the other's behalf.  The acts of any and all Defendants were in accordance with and

CLASS ACTION COMPLAINT

represent the official policies of Defendants.  At all times herein mentioned, Defendants, and each of them, ratified each and every act or omission complained of herein.  At all times herein mentioned, Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.

13. Plaintiff is informed and believes, and based thereon alleges, that each of said Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

## CLASS ACTION ALLEGATIONS

14. Plaintiff brings this action on his own behalf, as well as on behalf of each and all other persons similarly situated, and thus, seeks class certification under Rule 23 of the Federal Rules of Civil Procedure.

15. The proposed "Class" is defined as:

> "All those members of Teamsters Local 630 who took out group insurance policies with AFLAC that were, or should have been, subsequently transferred to Colonial Life, and for which Firstnet was responsible for processing direct deposit payroll deductions and making electronic fund transfers on their behalf during the relevant Class Period of four years preceding the filing of this Class Action Complaint."

16. There is a well-defined community of interest in the litigation and the class is easily ascertainable:

a. <u>Numerosity</u>:  The members of the Class and each Subclass (hereinafter collectively "Class Members") are so numerous that joinder of all members would be unfeasible and impractical.  The membership of the entire Class is unknown to Plaintiff at this time; however, the Class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendants' records.

b. <u>Typicality</u>:  Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom he has a well-defined

CLASS ACTION COMPLAINT

community of interest, and Plaintiff's claims (or defenses, if any) are typical of all Class Members' claims as demonstrated herein.

c.  <u>Adequacy</u>:  Plaintiff is qualified to, and will, fairly and adequately, protect the interests of each Class Member with whom Plaintiff has a well-defined community of interest and typicality of claims, as alleged herein.  Plaintiff acknowledges that he has an obligation to make known to the Court any relationship, conflicts, or differences with any Class Member.  Plaintiff's attorney and class counsel is versed in the rules governing class action discovery, certification, and settlement.  Plaintiff has incurred, and throughout the duration of this action will continue to incur, costs and attorney's fees that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

d.  <u>Superiority</u>:  The nature of this action makes the use of class action adjudication superior to other methods.  Class action will achieve economies of time, effort, and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class.

e.  <u>Public policy considerations</u>:  Class actions provide the Class Members who are not named in the complaint with a type of anonymity that allows for the vindication of their rights while still protecting their privacy.

17. There are common questions of law and fact as to the Class that predominate over questions affecting only individual members, including but not limited to:

a.  Whether Defendants violated 15 U.S.C. § 1693e(a) by initiating unauthorized electronic fund transfers;

CLASS ACTION COMPLAINT

b. Whether Defendants violated 15 U.S.C. § 1693e(b) by failing to provide reasonable advance notice of the amount to be transferred and the scheduled date of the transfer in the case of preauthorized transfers from the Class Members' accounts to the same person which may vary in amount;

c. Whether Firstnet made intentional misrepresentations to the Class Members regarding their Group Insurance policies;

d. Whether Firstnet made negligent misrepresentations to the Class Members regarding their Group Insurance policies;

e. Whether Defendants' conduct was willful or reckless;

f. Whether Defendants engaged in unfair business practices in violation of California Business and Professions Code §§ 17200 *et seq.*; and

g. The appropriate amount of damages, restitution, injunctive relief and/or monetary penalties resulting from Defendants' violations of the law.

## **FACTUAL BACKGROUND**

18. Plaintiff is, and during all relevant times herein mentioned, was a member of Teamsters Local 630.

19. Plaintiff is informed and believes, and based thereon alleges that, starting on or around November 1, 2013, Plaintiff and the other proposed Class Members obtained Accident & Critical Illness insurance policies through Aflac Group Insurance ("AFLAC").

20. Plaintiff is informed and believes, and based thereon alleges that Firstnet, the bill payment division of United Bank & Capital Trust Company at the time, processed direct deposit payroll deductions on Plaintiff's and the other proposed Class Members' behalf.  Firstnet deposited Plaintiff's and the other proposed Class Members' direct deposit payroll deduction to "Allotment Savings Accounts", from which it made recurring premium payments to AFLAC on their behalf.  Plaintiff's premium payments varied in amounts, ranging from $6.35 - $14.20. In addition, for

CLASS ACTION COMPLAINT

each transfer made from Plaintiff's Allotment Savings Account, Firstnet charged and retained a transfer fee in the amount of $1.50. Plaintiff is informed and believes, and based thereon alleges that the Class Members were charges similar amounts as Plaintiff.

21. Plaintiff is informed and believes, and based thereon alleges that, on or around August 2018, United Bank & Capital Trust Company merged into Defendant WesBanco Bank, Inc., after which Firstnet became a division of WesBanco Bank, Inc. Firstnet continued depositing Plaintiff's and the other Class Members' direct deposit payroll deduction into their respective Allotment Savings Accounts, from which it continued making weekly recurring premium payments on Plaintiff's and the other Class Members' behalf, and continued charging a $1.50 transfer fee for each transfer.

22. Plaintiff is informed and believes, and based thereon alleges that, Firstnet was notified in or around December 2017 that AFLAC would no longer be providing coverage to Plaintiff or the other Class Members, and that all existing insurance policies would be transferred to Colonial Life.

23. Plaintiff is informed and believes, and based thereon alleges that, Firstnet sent a notice to Plaintiff and the other policy holders on December 26, 2017, informing them of the transfer of their policies from AFLAC to Colonial Life. In the notice, Firstnet claimed that:

> "This change does not affect the amount of your payroll deduction and there is no change to the premium paid for insurance coverage. **If you would like to cancel your insurance coverage you will need to alert Colonial Life Insurance as soon as possible. If you would like to cancel your payroll deduction please contact us at the number below. Please remember, you have the right to stop a debit entry by notifying us prior to charging your account. You also have the right to have an erroneous debit re-credited to your account in accordance with the provisions of Regulation E-Electronic Funds Transfer Act."**

CLASS ACTION COMPLAINT

24. Plaintiff is informed and believes, and based thereon alleges that, Firstnet continued depositing Plaintiff's and the other Class Members' direct deposit payroll deductions into their respective Allotment Savings Accounts, from which it continued making weekly recurring premium payments to Colonial Life, and continued charging a $1.50 transfer fee for each transfer.

25. Plaintiff is informed and believes, and based thereon alleges that he and the other Class Members reasonably believed that they had Accident & Critical Illness insurance policies with Colonial Life, and based thereon continued having the premium payments deducted from their payroll and deposited with Firstnet, believing Firstnet was thereafter transferring the premium payments to Colonial Life.

26. In the beginning of June 2022, Plaintiff became aware of other members of Teamsters Local 630 being told that they had no policy with Colonial Life, even though they were making all premium payments through Firstnet as Plaintiff had been. This prompted Plaintiff to contact Colonial Life via telephone on June 6, 2022.

27. During Plaintiff's June 6, 2022 call with Colonial Life, Colonial Life was able to locate Plaintiff's account, including his policy number, through a search using his social security number.

28. During Plaintiff's June 6, 2022 call with Colonial Life, Colonial Life claimed that Plaintiff's policy had been cancelled. Plaintiff contested ever receiving any notice of his policy being cancelled, especially considering that he had been making all premium payments. However, if his policy really had been cancelled, Plaintiff told Colonial Life that he should have all of his payments refunded. Colonial Life told Plaintiff that they would look into the issue and get back to him.

29. Plaintiff received a letter from Colonial Life dated June 20, 2022 regarding "Policy/Certificate Number: 4875569120", which Plaintiff is informed and believes, and based thereon alleges is his insurance policy number. The letter stated:

> "We are writing you in response to your phone call received on 06/06/2022. According to our records your policy started on November

CLASS ACTION COMPLAINT

07, 2017 and has been cancelled as of June 09, 2018. As a result, no overpayment has been received for which we are not able to refund to you. We suggest that if you have further questions about your deductions that you speak with your payroll office.

If you have any questions, please contact us at 800-325-4368 or at Coloniallife.com."

30. After receiving this letter, Plaintiff called Colonial Life to gain more information regarding the cancellation of his policy, and Colonial Life's continued acceptance of Plaintiff's premium payments. However, whereas Colonial Life was able to access Plaintiff's account through a search of his social security number just a couple of weeks prior, Colonial Life now claimed that they could not locate any record of any policy associated with Plaintiff's social security number.

31. Following receipt of Colonial Life's letter dated June 20, 2022, Plaintiff reached out to AFLAC in an attempt to verify the information he received from Colonial Life. According to AFLAC, Plaintiff's Accident & Critical Illness policy was in effect until October 25, 2019.

32. Plaintiff then called Firstnet to inquire into where the money that was being deducted from his payroll had been going, given that Colonial Life's claim that they had received no payments from Plaintiff since his policy had been cancelled. Firstnet informed Plaintiff that they had been transferring the funds deducted from his payroll to Colonial Life, and provided Plaintiff with statements showing that they had in fact been transferring the biweekly premium payments to Colonial life.

33. Plaintiff is informed and believes, and based thereon alleges that, during all relevant times herein mentioned, Colonial Life has, and is continuing to perpetuate a scheme to defraud Plaintiff and the other Class Members by either cancelling their insurance policies after they were transferred from AFLAC, or unilaterally deciding to not renew their policies without notice, while at the same time continuing to accept all premium payments made on their behalf.

CLASS ACTION COMPLAINT

34. Plaintiff is informed and believes, and based thereon alleges that Colonial Life attempted to cover up their scheme to defraud by removing Plaintiff's information from their records after sending Plaintiff their letter dated June 20, 2022, so as to conceal the fact that they were continuing to accept premium payments on a policy which they claim was cancelled as of June 9, 2018, and to justify their refusal to refund the premium payments that it continued to collect after June 9, 2018.

35. Even after Colonial Life claimed that Plaintiff had no insurance policy with them, Colonial Life continued accepting Plaintiff's bi-weekly premium payments. However, starting on or around December 13, 2022, Colonial Life started mailing Plaintiff checks in the amount of $6.35, which Plaintiff is informed and believes, and based thereon alleges were to refund the premium payments that were still being made on Plaintiff's behalf, but Colonial Life retained all other premium payments previously made on Plaintiff's behalf.

36. On January 20, 2023, Plaintiff called Firstnet and told them that he believed they had been making premium payments to Colonial Life in error, given Colonial Life's claim that Plaintiff's policy had been cancelled, and asked Firstnet to conduct an investigation. Firstnet told Plaintiff that they would look into the matter and get back to him. However, as of February 3, 2023, Plaintiff had not heard back from Firstnet.

## FIRST CAUSE OF ACTION
### Violation of 15 U.S.C. § 1693e(a)
### Against All Defendants; and on Behalf of Plaintiff and the Proposed Class Members

37. Plaintiff incorporates by reference all preceding paragraphs as if alleged herein.

38. During all relevant times herein mentioned, 15 U.S.C. § 1693e(a) has provided that:

CLASS ACTION COMPLAINT

"A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made...."

39. During all relevant times herein mentioned, Plaintiff's and the other proposed Class Members' Firstnet accounts qualified as "accounts" as the term is defined by 15 U.S.C. § 1693a(2), as they are demand deposit, savings deposit and/or other asset accounts that were established primarily for personal, family, or household purposes, and they are not accounts held by a financial institution pursuant to a bona fide trust agreement..

40. During all relevant times herein mentioned, Plaintiff and the other proposed Class Members constituted "consumers" as defined by 15 U.S.C. § 1693a(6), as they are all natural persons.

41. During all relevant times herein mentioned, Commentary to 12 C.F.R. § 205, Supp. I, § 205.10(b)(6) has provided that authorizations pursuant to the EFTA must be "readily identifiable as such" and the terms must be "clear and readily understandable."

42. Plaintiff is informed and believes, and based thereon alleges that any written authorizations that Plaintiff and the other Class Members provided to Defendants pursuant to 15 U.S.C. § 1693e(a) were limited to authorizing Defendants to make debits from their accounts for the purposes of paying premiums and electronic fund transfer fees for active insurance policies, and Defendants exceeded the scope of these written authorizations by debiting Plaintiff's and the other Class Members' accounts after their insurance policies with Colonial Life were no longer active.

43. Plaintiff is informed and believes, and based thereon alleges that he and the other Class Members were damaged by Defendants' violations of 15 U.S.C. 1693e(a), in amounts to be shown at trial, but which include the premium payments debited from Plaintiff's and the other Class Members' Firstnet accounts after their policies with Colonial Life had been canceled, and also corresponding transfer fees charged by Firstnet.

CLASS ACTION COMPLAINT

44. During all relevant times herein mentioned, 15 U.S.C. § 1693m has provided that:

> "any person who fails to comply with any provision of this title [15 USCS §§ 1693 et seq.] with respect to any consumer, except for an error resolved in accordance with section 908 [15 USCS § 1693f], is liable to such consumer in an amount equal to the sum of...
>
> (1) any actual damage sustained by such consumer as a result of such failure;
>
> (2) (A) in the case of an individual action, an amount not less than $100 nor greater than $1,000; or
>
> (B) in the case of a class action, such amount as the court may allow, except that (i) as to each member of the class no minimum recovery shall be applicable, and (ii) the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same person shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the defendant; and
>
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court."

45. During all relevant times herein mentioned, Defendants were "persons" under the EFTA who, by engaging in the unlawful conduct alleged herein, failed to comply with 15 U.S.C. § 1693e(a).

46. Plaintiff is therefore entitled to collect from Defendants, on behalf of himself and the other Class Members, the amounts proscribed for under 15 U.S.C. § 1693m, including costs and reasonable attorney's fees.

//
//
//
//

## SECOND CAUSE OF ACTION
### Violation of 15 U.S.C. § 1693e(b)
### Against All Defendants; and on Behalf of Plaintiff and the Proposed Class Members

47. Plaintiff incorporates by reference all preceding paragraphs as if alleged herein.

48. During all relevant times herein mentioned, 15 U.S.C. § 1693e(b) has provided that:

> "In the case of preauthorized transfers from a consumer's account to the same person which may vary in amount, the financial institution or designated payee shall, prior to each transfer, provide reasonable advance notice to the consumer, in accordance with regulations of the Bureau, of the amount to be transferred and the scheduled date of the transfer."

49. Pursuant to 12 C.F.R. § 205.10(d):

> "When a preauthorized electronic fund transfer from the consumer's account will vary in amount from the previous transfer under the same authorization or from the preauthorized amount, the designated payee or the financial institution shall send the consumer written notice of the amount and date of the transfer at least 10 days before the scheduled date of transfer."

50. During all relevant times herein mentioned, Plaintiff's and the other proposed Class Members' Firstnet accounts qualified as "accounts" as the term is defined by 15 U.S.C. § 1693a(2), as they are demand deposit, savings deposit and/or other asset accounts that were established primarily for personal, family, or household purposes, and they are not accounts held by a financial institution pursuant to a bona fide trust agreement.

51. During all relevant times herein mentioned, Plaintiff and the other proposed Class Members were "consumers" as defined by 15 U.S.C. § 1693a(6), as they are all natural persons.

52. Plaintiff is informed and believes, and based thereon alleges that, during the Class Period of one year preceding the filing of this complaint, Plaintiff and the other

- 12 -

Class Members had funds transferred from their Firstnet accounts to Colonial Life in varying amounts, and Defendants failed to provide Plaintiff and the other Class Members with reasonable advance notice, in accordance with regulations of the Bureau, of the amount to be transferred and the scheduled date of the transfer, in violation of 15 U.S.C.§ 1693e(b).

53. With respect to Plaintiff, and as alleged herein, Colonial Life was electronically transferred amounts varying between $6.35 and $14.20 from his Firstnet account, and Defendants failed to provide Plaintiff with reasonable advance notice of the amounts to be transferred and the scheduled date of the transfers.  For example, Colonial Life was electronically transferred $6.35 from Plaintiff's Firstnet account on January 21, 2022, and was then electronically transferred $14.20 from Plaintiff's Firstnet account on February 4, 2022.  However, Colonial Life failed to provide Plaintiff with reasonable advanced notice of the amount to be transferred, or the scheduled date of the transfer.

54. Plaintiff is informed and believes, and based thereon alleges that Colonial Life similarly failed to provide the other Class Members with reasonable advance notice of the amount to be transferred, or the scheduled date of the transfers, during the Class Period, in violation of 15 U.S.C. 1693e(b).

55. Plaintiff is informed and believes, and based thereon alleges that he and the other Class Members were damaged by Colonial Life's violation of 15 U.S.C. 1693e(b), in amounts to be shown at trial.

56. During all relevant times herein mentioned, 15 U.S.C. § 1693m has provided that:

> "any person who fails to comply with any provision of this title [15 USCS §§ 1693 et seq.] with respect to any consumer, except for an error resolved in accordance with section 908 [15 USCS § 1693f], is liable to such consumer in an amount equal to the sum of...

CLASS ACTION COMPLAINT

(1) any actual damage sustained by such consumer as a result of such failure;

(2) (A) in the case of an individual action, an amount not less than $100 nor greater than $1,000; or

(B) in the case of a class action, such amount as the court may allow, except that (i) as to each member of the class no minimum recovery shall be applicable, and (ii) the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same person shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the defendant; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court."

57. During all relevant times herein mentioned, Defendants were "persons" under the EFTA who, by engaging in the unlawful conduct alleged herein, failed to comply with 15 U.S.C. § 1693e(b).

58. Plaintiff is therefore entitled to collect from Defendants, on behalf of himself and the other Class Members, the amounts proscribed for under 15 U.S.C. § 1693m, including costs and reasonable attorney's fees.

### THIRD CAUSE OF ACTION
### Violation of 15 USCS § 1693f
### Against Defendants Firstnet and DOES 1-10; and on behalf of Plaintiff.

59. Plaintiff incorporates by reference all preceding paragraphs as if alleged herein.

60. During all relevant times herein mentioned, 15 USCS § 1693f(a) has provided that:

If a financial institution, within sixty days after having transmitted to a consumer documentation pursuant to section 906(a), (c), or (d) [15 USCS § 1693d(a), (c), or (d)] or notification pursuant to section 906(b) [15 USCS § 1693d(b)], receives oral or written notice in which the consumer—

(1) sets forth or otherwise enables the financial institution to identify the name and account number of the consumer;

(2) indicates the consumer's belief that the documentation, or, in the case of notification pursuant to section 906(b) [15 USCS § 1693d(b)], the consumer's account, contains an error and the amount of such error; and

(3) sets forth the reasons for the consumer's belief (where applicable) that an error has occurred,

the financial institution shall investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days. The financial institution may require written confirmation to be provided to it within ten business days of an oral notification of error if, when the oral notification is made, the consumer is advised of such requirement and the address to which such confirmation should be sent. A financial institution which requires written confirmation in accordance with the previous sentence need not provisionally recredit a consumer's account in accordance with subsection (c), nor shall the financial institution be liable under subsection (e) if the written confirmation is not received within the ten-day period referred to in the previous sentence."

61. During all relevant times herein mentioned, 15 U.S.C. § 1693f(f) has provided that, "For the purpose of this section, an error consists of – (1) an unauthorized electronic fund transfer;...''; which is defined by 15 U.S.C. § 1693a(12) as meaning:

"an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit, but the term does not include any electronic fund transfer (A) initiated by a person other than the consumer who was furnished with the card, code, or other means of access to such consumer's account by such consumer, unless the consumer has notified the financial institution involved the transfers by such other person are no longer authorized, (B) initiated with fraudulent intent by the consumer or any person acting in concert with the consumer, or (C) which constitutes an error committed by a financial institution."

CLASS ACTION COMPLAINT

62. As alleged herein, Plaintiff called Firstnet on January 20, 2023, and told them that he believed they had been making premium payments to Colonial Life in error, given Colonial Life's claim that Plaintiff's policy had been cancelled, and asked Firstnet to conduct an investigation.

63. During this call, Plaintiff informed Firstnet of: (1) his name and other information enabling Firstnet to identify his account number; (2) his belief that the statements he received from Firstnet within the preceding sixty (60) days contained errors and the amounts of those errors; and (3) the reasons for Plaintiff's belief that errors had occurred, specifically that they showed that funds were still being transferred to Colonial Life for insurance premium payments when Colonial Life was claiming that his insurance policy had been canceled, in accordance with 15 U.S.C. § 1693f(a).

64. During all relevant times herein mentioned, 15 U.S.C. § 1693f(c) has provided that:

> "If a financial institution receives notice of an error in the manner and within the time period specified in subsection (a), it may, in lieu of the requirements of subsections (a) and (b), within ten business days after receiving such notice provisionally recredit the consumer's account for the amount alleged to be in error, subject to section 909 [15 USCS § 1693g], including interest where applicable, pending the conclusion of its investigation and its determination of whether an error has occurred. Such investigation shall be concluded not later than forty-five days after receipt of notice of the error. During the pendency of the investigation, the consumer shall have full use of the funds provisionally recredited."

65. Firstnet told Plaintiff that they would look into the matter and get back to him. However, as of the end of business on February 3, 2023, Plaintiff had not heard back from Firstnet and Firstnet failed to provisionally recredit Plaintiff's account, in violation of 15 U.S.C. § 1693f(c).

66. During all relevant times herein mentioned, 15 U.S.C. § 1693m has provided that:

CLASS ACTION COMPLAINT

"any person who fails to comply with any provision of this title [15 USCS §§ 1693 et seq.] with respect to any consumer, except for an error resolved in accordance with section 908 [15 USCS § 1693f], is liable to such consumer in an amount equal to the sum of...

(1) any actual damage sustained by such consumer as a result of such failure;

(2) (A) in the case of an individual action, an amount not less than $100 nor greater than $1,000; or

(B) in the case of a class action, such amount as the court may allow, except that (i) as to each member of the class no minimum recovery shall be applicable, and (ii) the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same person shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the defendant; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court."

67. Firstnet, by engaging in the unlawful conduct alleged herein, violated 15 U.S.C. § 1693f.  Firstnet is therefore liable to Plaintiff in the amounts set forth in 15 U.S.C. § 1693m, including costs and reasonable attorney's fees.

68. During all relevant times herein mentioned, 15 U.S.C. § 1693f(e) has provided that:

If in any action under section 915 [15 USCS § 1693m], the court finds that—

(1) the financial institution did not provisionally recredit a consumer's account within the ten-day period specified in subsection (c), and the financial institution (A) did not make a good faith investigation of the alleged error, or (B) did not have a reasonable basis for believing that the consumer's account was not in error; or

(2) the financial institution knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not

CLASS ACTION COMPLAINT

reasonably have been drawn from the evidence available to the financial
institution at the time of its investigation,

then the consumer shall be entitled to treble damages determined under
section 915(a)(1) [15 USCS § 1693m(a)(1)]."

69. Plaintiff is informed and believes, and based thereon alleges that Firstnet
failed to provisionally recredit Plaintiff's account within the ten-day period specified
in subsection (c), and the Firstnet either: (A) did not make a good faith investigation
of the alleged error, or (B) did not have a reasonable basis for believing that
Plaintiff's account was not in error.  Plaintiff is further informed and believes, and
based thereon alleges that Firstnet knowingly and willfully concluded that Plaintiff's
account was not in error when such conclusion could not have been drawn from the
evidence available to it at the time of its investigation, if any.  Firstnet should
therefore also be liable to Plaintiff for treble damages determined under section
1693m(a)(1).

**FOURTH CAUSE OF ACTION**
**Intentional Misrepresentation**
**Against Defendants Firstnet and DOES 1-10, and on behalf of Plaintiff and the**
**Other Proposed Class Members**

70. Plaintiff incorporates by reference all preceding paragraphs as if alleged
herein.

71. Plaintiff is informed and believes and based thereon alleges that Firstnet
issued a letter to Plaintiff and the other proposed Class Members on December 26,
2017, stating that AFLAC would no longer be providing coverage to them, and that
their Group Insurance coverage was being transferred to Colonial Life.  The letter
went on to state that:

"This change does not affect the amount of your payroll deduction and
there is no change to the premium paid for insurance coverage.  If you
would like to cancel your insurance coverage you will need to alert
Colonial Life Insurance as soon as possible."

- 18 -

72. Plaintiff is informed and believes, and based thereon alleges that Firstnet thereafter began making electronic fund transfers from Plaintiff's and the other Class Members' accounts to Colonial Life, and issued statements to Plaintiff and the other Class Members showing the same.

73. Firstnet therefore represented to Plaintiff and the other Class Members, through their letter dated December 26, 2017 and subsequent conduct of electronically transferring to Colonial Life the premium payments from their accounts, that their Group Insurance policies had been transferred to Colonial Life, and that their insurance coverage would not be canceled unless they alerted Colonial Life that they wanted to cancel their policies.

74. Plaintiff is informed and believes, and based thereon alleges that Firstnet representations were false, as Plaintiff's and the other Class Members Group Insurance policies were unilaterally canceled by Colonial Life without Plaintiff or the other Class Members alerting Colonial Life that they wanted to cancel their policies.

75. Plaintiff is informed and believes, and based thereon alleges that that Firstnet continued electronically transferring Plaintiff's and the other Class Members premium payments from their accounts to Colonial Life after Colonial Life unilaterally cancelled their insurance policies without providing notice of such cancelations.

76. Plaintiff is informed and believes, and based thereon alleges that Firstnet either knew that the representation was false when it was made, or that Firstnet made the representation recklessly and without regard for its truth.  Plaintiff is further informed and believes, and based thereon alleges that Firstnet continued to perpetuate the intentional misrepresentation by continuing to make the premium payments to Colonial Life after Colonial Life unilaterally cancelled the policies without providing notice to Plaintiff or the other Class Members.

77. Plaintiff is informed and believes, and based thereon alleges that Firstnet intended on Plaintiff and the other Class Members to rely on its representation, and

that Plaintiff and the other Class Members reasonably relied on Firstnet's representations. Plaintiff's and the other Class Members' reliance on Firstnet's representations were reasonable, as they were never provided with notice that Colonial Life unilaterally canceled their insurance policies, and Firstnet continued issuing statements to Plaintiff and the other Class Members showing that their premium payments were being electronically transferred from their accounts to Colonial Life each month.

78. Plaintiff is informed and believes, and based thereon alleges that he and the other Class Members were harmed as a result of their reasonable reliance upon Firstnet's representations, as they continued having Firstnet electronically transfer their premium payments to Colonial Life, and Firstnet charged Plaintiff and the other Class Members a $1.50 fee for each electronic transfer.

79. Plaintiff is informed and believes, and based thereon alleges that his and the other Class Members' reliance upon Firstnet's representations was a substantial factor in causing their harm, as they would not have continued making the premium payments to Colonial Life and continued incurring Firstnet's electronic transfer fees, had they been notified that Colonial Life unilaterally cancelled their insurance policies.

80. As a direct and foreseeable result of Firstnet's conduct, Plaintiff and the other Class Members have sustained economic damages, the amount of which will be shown at trial, but which includes the premium payments that were paid to Colonial Life after Colonial Life unilaterally cancelled their insurance policies, as well as the $1.50 transfer fee that Firstnet charged for each electronic fund transfer.

81. Plaintiff is informed and believes, and on that basis alleges, that in committing the aforementioned acts and concealments, Defendant is guilty of oppression, fraud and malice, as such terms are defined by California Civil Code § 3294(c), towards Plaintiff and the other Class Members.

CLASS ACTION COMPLAINT

82. Plaintiff is informed and believes, and on that basis alleges, that Defendant's wrongful conduct was carried out and ratified by its managing agents, officers, and/or directors or Defendant's managing agent had advance knowledge of the unfitness of its decision-makers and employed them with a conscious disregard of Plaintiffs' rights and/or authorized and/or ratified their conduct. Therefore, in addition to actual damages, Plaintiff and the other Class Members are entitled to recover punitive damages pursuant to California Civil Code § 3294 from Firstnet for the purpose of punishing and deterring it and others from engaging in such actions in the future.

## FIFTH CAUSE OF ACTION
### Negligent Misrepresentation
**Against Defendants Firstnet and DOES 1-10, and on behalf of Plaintiff and the Other Proposed Class Members**

83. Plaintiff incorporates by reference all preceding paragraphs as if alleged herein.

84. Plaintiff is informed and believes, and based thereon alleges that, if Firstnet's actions as described herein do not constitute an intentional misrepresentation, then Firstnet's actions constitute a negligent misrepresentation, as Firstnet: (1) made a misrepresentation of a past or existing material fact regarding the transfer of Plaintiff's and the other Class Members' Group Insurance policies from AFLAC to Colonial Life; (2) made the misrepresentation without reasonable grounds for believing it to be true; (3) made the misrepresentation with the intent to induce Plaintiff's and the other Class Members' reliance on the fact misrepresented; (4) Plaintiff and the other Class Members justifiably relied on Firstnet's misrepresentations; and (5) Plaintiff and the other Class Members suffered damages as a result thereof, in amounts to be shown at trial.

85. Plaintiff is therefore entitled to collect damages from Firstnet on behalf of himself and the other Class Members in amounts to be shown at trial, but which include the premium payments that were made to Colonial Life after their Group Insurance

- 21 -

policies were cancelled, and the corresponding electronic fund transfer fees charged by Firstnet.

## SIXTH CAUSE OF ACTION
### Fraud
**Against Defendants Colonial Life and DOES 1-10; and on Behalf of Plaintiff and the Proposed Class Members**

86. Plaintiff incorporates by reference all preceding paragraphs as if alleged herein.

87. During all relevant times herein mentioned, California Civil Code § 1709 has provided that: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

88. During all relevant times herein mentioned, California Civil Code § 1710 has provided that:

"A deceit, within the meaning of the last section, is... 3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact..."

89. Plaintiff is informed and believes, and based thereon alleges that he and the other Class Members were in a fiduciary relationship with Colonial Life during the relevant Class Period, in that Plaintiff and the other Class Members contracted with Colonial Life to provide insurance policies to them.

90. Plaintiff is informed and believes, and based thereon alleges that Colonial Life intentionally failed to disclose certain facts to Plaintiff and the other Class Members. Specifically, Plaintiff is informed and believes, and based thereon alleges that Colonial Life intentionally failed to disclose the fact that it had cancelled Plaintiff's and the other Class Members' insurance policies.

91. Plaintiff is informed and believes, and based thereon alleges that neither he nor the other Class Members knew that Colonial Life had cancelled their insurance policies.

92. Plaintiff is informed and believes, and based thereon alleges that Colonial Life intended to deceive Plaintiff and the other Class Members into believing that their insurance policies were still active, so that it could continue collecting premium payments from them.

93. Plaintiff is informed and believes, and based thereon alleges that, had Colonial Life informed him and the other Class Members that their insurance policies had been canceled, Plaintiff and the other Class Members reasonably would have behaved differently in that they would not have continued to make premium payments to Colonial Life.

94. Plaintiff and the other Class Members were harmed as a result of Colonial Life's concealment, which was a substantial factor in causing Plaintiff's and the other Class Members' harm.

95. Plaintiff is therefore entitled to recover from Colonial Life, on behalf of himself and the other Class Members, all damages caused by Colonial Life's deceptive conduct, including the premium payments that Plaintiff and the other Class Members made to Colonial Life after their insurance policies were no longer active and also the electronic transfer fees incurred in making such payments.

96. Plaintiff is informed and believes, and on that basis alleges, that Colonial Life's wrongful conduct was carried out and ratified by its managing agents, officers, and/or directors or Colonial Life's managing agent had advance knowledge of the unfitness of its decision-makers and employed them with a conscious disregard of Plaintiffs' rights and/or authorized and/or ratified their conduct. Therefore, in addition to actual damages, Plaintiff and the other Class Members are entitled to recover punitive damages pursuant to California Civil Code § 3294 from Colonial Life for the

purpose of punishing and deterring it and others from engaging in such actions in the future.

## SEVENTH CAUSE OF ACTION
### Violation of California Business & Professions Code § 17200, *et seq.* (Unfair Competition)
### Against All Defendants; and on Behalf of Plaintiff and the Proposed Class Members

97. Plaintiff incorporates by reference all preceding paragraphs as if alleged herein.

98. Plaintiff brings this cause of action on behalf of himself, the proposed Class Members and the general public.

99. Defendants' conduct, as alleged herein, has been, and continues to be, unlawful, unfair and fraudulent business acts and practices, and harmful to Plaintiff, the proposed Class Members and the general public. Plaintiffs seek to enforce important rights affecting the public interest within the meaning of California Code of Civil Procedure § 1021.5.

100. Defendants' conduct as alleged herein violates California law, and constitutes unlawful business acts and practices in violation of California Business & Professions Code §§ 17200, *et seq*. Defendant's acts constitute violations of, inter alia, California common law and Insurance Code §§ 331, 332, 481 & 481.5. In addition, a violation of California Business & Professions Code §§ 17200, *et seq.*, may be predicated on the violation of any federal law, including the Electronic Fund Transfer Act, 15 U.S.C. 1693 *et seq*.

101. Plaintiff, the proposed Class Members and the general public have been personally aggrieved by Defendant's unlawful, unfair and fraudulent business acts and practices as alleged herein, including, but not necessarily limited to, the loss of money or property.

102. Defendants have profited from their unlawful business practices set forth herein.

- 24 -

103. Pursuant to California Business & Professions Code §§ 17200, *et seq.*, Plaintiff and the other proposed Class Members are entitled to restitution of the premium payments wrongfully accepted and retained by Defendant during the Class Period; a permanent public injunction requiring Defendant to refrain from engaging in the unlawful, deceptive and fraudulent business practices alleged herein and requiring Defendant to pay all premium payments wrongfully accepted and retained by Defendant; an award of attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and other applicable law; and an award of costs.

## **PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and on behalf of all others similarly situated, prays for relief and judgement against Defendants as follows:

1. That this action be certified as a class action;

2. For general and special damages, in sums to be proven at trial;

3. For punitive damages;

4. For treble damages, pursuant to 15 U.S.C. § 1693f;

5. For restitution & private and public injunctive relief, pursuant to the UCL;

6. For prejudgment interest;

7. For attorney's fees pursuant to: (1) contract, to the extent they are available; (2) Code of Civil Procedure § 1021.5; and (3) 15 U.S.C. § 1693m; and

8. For any and all other relief that the court deems appropriate.

Dated:  February 3, 2023                    Respectfully Submitted,


SZMANDA LAW FIRM, P.C.


By: _____
     Brett Szmanda
     Attorney for Plaintiff & Class Members

CLASS ACTION COMPLAINT

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff, on behalf of himself and on behalf of all others similarly situated, demands a trial by jury on all issues so triable.

Dated:  February 3, 2023                    Respectfully Submitted,


                                            SZMANDA LAW FIRM, P.C.


                                            By: _____
                                                Brett Szmanda
                                                Attorney for Plaintiff & Class Members